UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CALEB L. MCGILLVARY, <br><br> Plaintiff, <br><br> v. <br><br> ROLLING STONE, LLC, ET AL., <br><br> Defendants. | 23 Civ. 10428 (DEH) <br><br> **MEMORANDUM OPINION AND ORDER** |

DALE E. HO, United States District Judge:

Plaintiff Caleb McGillvary, proceeding *pro se*, filed this action against Rolling Stone, LLC, Marlow Stern, and Wenner Media, LLC (collectively "Defendants"), asserting a cause of action for defamation arising out of a magazine article published by Defendants in *Rolling Stone* magazine.[1] Before the Court is Defendants' Motion to Dismiss.[2] For the reasons discussed below, Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's motion to file a Second Amended Complaint is **DENIED** as futile.

### BACKGROUND[3]

The following facts are taken from the First Amended Complaint and presumed to be true solely for purposes of adjudicating Defendants' Motion to Dismiss.[4] Because Plaintiff proceeds

---

[1] *See* First Am. Compl. ("FAC"), ECF No. 33; *see also* Mem. Supp. Defs.' Mot. Dismiss Pl.'s First Am. Compl. ("Defs.' Mem."), ECF No. 44.

[2] *See* Notice Defs.' Mot. Dismiss, ECF No. 42.

[3] In all quotations from cases, citations, footnotes, brackets, ellipses, and emphases are omitted unless otherwise indicated. All references to Rules are to the Federal Rules of Civil Procedure.

[4] *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) ("We review a district court's grant of a motion to dismiss the complaint on the pleadings de novo and 'construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.'").

*pro se*, his submissions are construed liberally to raise the strongest arguments that they suggest.[5] The Court also incorporates factual allegations made in Plaintiff's submission in opposition to the Motion,[6] as well as the factual record from *People v. McBride*.[7]

On February 1, 2013, Plaintiff was involved in an incident that would later become the subject of a Netflix documentary titled "The Hatchet Wielding Hitchhiker" (the "Documentary").[8] In the incident, discussed further below, the Plaintiff used a hatchet to defend a crowd of people from Jett Simmons McBride, who drove his car into the group in a racially motivated attack.[9] The Documentary also details Plaintiff's subsequent conviction for an unrelated murder for which Plaintiff is currently incarcerated.[10] On January 8, 2023, Defendants published an article titled, "DARK TALE: A Hatchet Wielding Hitchhiker Went Viral. Then He Killed Someone" (the "Article"), which reviewed the Documentary and provided further reporting on these events.[11] This suit arises out of comments made in that Article.[12]

---

[5] *See Saeli v. Chautauqua Cnty.*, 36 F.4th 445, 457 (2d Cir. 2022) ("It is . . . 'well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest'" (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

[6] *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

[7] *See People v. McBride*, No. F068949, 2016 WL 336205 (Cal. Ct. App. Jan. 27, 2016); *see also* FAC ¶ 2 ("Plaintiff . . . relies upon the Court Record of People v. McBride . . . and incorporates [the record] by reference herein.").

[8] FAC ¶¶ 2-3.

[9] *Id.* ¶ 2.

[10] *See generally id.*

[11] FAC ¶ 3; *see also* Oberlander Decl., Ex. 1, ECF No. 45-1.

[12] *See* FAC ¶ 3.

At the time of the incident, Plaintiff, who described himself as a "homeless street performer," was "hitchhiking."[13] That day, Plaintiff was hitchhiking around Bakersfield, CA when he was picked up by Jett Simmons McBride.[14] The two drove to Fresno, where they picked up a bag of marijuana.[15] Both subsequently shared a joint at a nearby recycling center.[16] As they were driving away from the recycling center, McBride made a comment about how he previously "went to the Virgin Islands and raped a 14-year-old" girl.[17] Eventually, with "both his hands on the steering wheel," McBride "intentionally crashed his car into a crowd of power line workers."[18] After the collision, McBride started shouting, *inter alia*, "I am God. I am Jesus. I was sent here to take all the [n-word]s to heaven."[19] Rayshawn Neely, who was Black, was pinned by the car.[20]

Eventually, Tonya Baker approached McBride.[21] McBride got out of the car and "grabbed [her] in a 'bear hug,' . . . escalating force against her."[22] Plaintiff warned McBride to let go of Baker, and in response, McBride shouted "I'd kill you all."[23] "Plaintiff then used his camping hatchet" on McBride's head to make McBride release Baker.[24] Eventually law enforcement

---

[13] *Id.* ¶ 1.

[14] *McBride*, 2016 WL 336205, at *6.

[15] *Id.*

[16] *Id.*

[17] *McBride*, 2016 WL 336205, at *6; *see also* FAC ¶ 1.

[18] FAC ¶ 2; *see also McBride*, 2016 WL 336205, at *6 ("There were about six workers in front of the car; defendant drove the car at all of them.").

[19] FAC ¶ 2; *see also McBride*, 2016 WL 336205, at *3.

[20] *McBride*, 2016 WL 336205, at *6.

[21] *Id.* at *2.

[22] FAC ¶ 2.

[23] *Id.*

[24] *Id.*

officers came to the scene and determined that Plaintiff "used justified force in defense of others; was cleared of any wrongdoing in the incident; and was released without any charges or reprimands."[25]

After these events, Plaintiff was convicted for homicide in connection with an unrelated incident, which he represents was in response to being "drugged" and "sexually assaulted" by his victim.[26] Plaintiff is currently serving a 57-year sentence for first degree murder.[27]

On January 8, 2023, *Rolling Stone* published the Article, which discusses the then-upcoming Documentary centered on the hatchet incident and Plaintiff's subsequent conviction.[28] Specifically, the Article contains four statements with which Plaintiff takes issue.[29]

- First, that "[t]hose who knew [Plaintiff] describe [him] . . . as prone to fits of rage," (the "fits of rage" statement).[30]

- Second, "[Plaintiff] tried to start a fire in the family home and was subsequently sent into foster care at the age of 13," (the "fire starter" statement).[31]

- Third, "[Plaintiff] began bragging to Fresno locals that he'd handed the driver, Jett McBride, a joint laced with a number of drugs but he 'couldn't handle his shit.' (A toxicology report only found marijuana in McBride's system.)," (the "laced joint" statement).[32]

---

[25] *Id.*

[26] *Id.*

[27] *See State v. McGillvary*, No. A-4519-18, 2021 WL 3378024, at *1 (N.J. Super. Ct. App. Div. Aug. 4, 2021).

[28] FAC ¶ 3.

[29] *See id.*

[30] *Id.* ¶ 3.

[31] *Id.*

[32] *Id.*

4

- Finally, a comment "by a Fresno cop" not at the scene, who stated that "[Plaintiff told] McBride that they were both ghosts, adding 'I bet we could drive through that truck right now and nobody could see us,'" (the "ghosts" statement).[33]

Plaintiff claims that these statements are defamatory. Specifically, he contends that:

(1) the "fits of rage" statement "mischaracterizes" Plaintiff and discounts his post-traumatic stress disorder;

(2) the "fire starter" statement suggests "Plaintiff committed an act of . . . arson at the age of 13;"

(3) the "laced-joint" statement and the "ghosts" statement suggest Plaintiff compelled McBride to collide into the crowd during the February incident.[34] Plaintiff also alleges these statements suggest that "Plaintiff perjured himself" while testifying against McBride in the subsequent arraignment.[35]

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[36] "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the [plaintiff's] favor."[37] However, a court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'"[38]

A *pro se* litigant's filings must be construed liberally to raise the strongest possible arguments they suggest, but they nonetheless must raise a plausible claim for relief.[39] Pleadings prepared by *pro se* litigants are held "to less stringent standards than formal pleadings drafted by

---

[33] *Id.* ¶¶ 1, 3.

[34] *Id.*

[35] *Id.*

[36] *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[37] *Id.* at 106-07.

[38] *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[39] *Walker*, 717 F.3d at 124.

lawyers."[40]  A *pro se* party is not required to identify specific laws that he seeks relief under or claims that he alleges, only facts in support of such claims.[41]

On a motion to dismiss, a court may consider "documents either in [plaintiff's] possession or of which plaintiff[] had knowledge and relied on in bringing suit,"[42] documents that are "integral to the complaint," even when the plaintiff "chooses not to attach [the document] to the complaint or incorporate [the document] by reference,"[43] "any statements or documents incorporated . . . by reference" in the pleading,[44] and "matters of which judicial notice may be taken."[45]

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander."[46]  "Under New York law[,] a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability."[47]

---

[40] *Janczuk v. Fed. Commc'ns Comm'n.*, No. 24 Civ. 2445, 2024 WL 3228521, at *1 (S.D.N.Y. June 26, 2024).

[41] *See Dingle v. Zon*, 189 F. App'x 8, 10 (2d Cir. 2006).

[42] *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014).

[43] *Condit v. Dunne*, 317 F. Supp. 2d 344, 356 (S.D.N.Y. 2004) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).

[44] *Kalyanaram*, 742 F.3d at 44 n.1.

[45] *Id.*

[46] *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012).

[47] *Palin*, 940 F.3d at 809.

## DISCUSSION

### A. Motion to Dismiss

Defendants seek dismissal under Rule 12(b)(6) on various grounds, including that: (1) Plaintiff, who was convicted of first-degree murder, is libel-proof under New York law;[48] (2) that Plaintiff is a limited-purpose public figure, for whom actual malice by the Defendant is a necessary element of a claim for defamation, and that Plaintiff has not alleged actual malice here;[49] and (3) that Plaintiff's claims fail because they are not based on actionable statements.[50] Below, the Court considers in turn each of the allegedly defamatory statements in light of Defendants' various arguments. For the reasons that follow, the Court concludes that each statement at issue here is not actionable in its own right. Accordingly, Defendants' Motion to Dismiss is **GRANTED**.

***"Fits of Rage" Statement.*** First, the "fits of rage" statement fails to qualify as defamation, because it is a statement of protected opinion. Expressions of opinion are explicitly protected under the New York Constitution.[51] To make this determination, courts use a "flexible approach" that considers three factors.[52] These are:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact.[53]

---

[48] *See* Defs.' Mem. at 13-17.

[49] *See id.* at 10-13.

[50] *See id.* at 17-20.

[51] *Rosa v. Eaton*, No. 23 Civ. 6087, 2024 WL 3161853, at *3 (S.D.N.Y. June 25, 2024).

[52] *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 153 (2d Cir. 2000).

[53] *Id.* (citing *Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1167 (N.Y. 1993).

The Court of Appeals has held that "context should be the primary focus of the fact/opinion analysis."[54]

Taken as a whole, the "fits of rage" statement qualifies as an expression of opinion. Immediately after stating that "[t]hose who knew him" describe Plaintiff "as prone to fits of rage," the Article quotes an interview with Plaintiff's cousin, Jeremy McGilvery Wolfe.[55] "I honestly believe [Plaintiff] has mental issues, because he seems well but when it comes to a certain situation of pressure, you either become a diamond or you get crushed."[56] New York courts have found similar statements to be expressions of opinion.[57] Especially considering the subsequent quote by Wolfe in the later paragraph, this comment is clearly discussing an opinion about Plaintiff, rather than asserting an actual statement of fact regarding his behavior.

*"Fire Starter" Statement.* Plaintiff takes issue with the statement made by his cousin that "[Plaintiff] tried to start a fire in the family home and was subsequently sent into foster care at the age of 13."[58] But Plaintiff admits that this statement is true. According to the First Amended Complaint, Plaintiff asserts that "[he] attempted to commit suicide at 4 years of age; by drinking a bottle of cough syrup and lighting a sleeping bag on fire."[59] Because Plaintiff himself alleges that he attempted to start a fire in his family home, the "fire starter" statement in the Article cannot be a basis for a defamation claim.

---

[54] *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 505 (S.D.N.Y. 2012).

[55] Article at 3.

[56] *Id.*

[57] *See, e.g.*, *Joseph v. Joseph*, 107 A.D.3d 441, 442 (1st Dept. 2013) (finding that statements calling plaintiff "a 'scorned' woman, [with] a 'maniacal rage,' [who] went into 'terroristic binges'" as expressions of opinion).

[58] FAC ¶ 3.

[59] *Id.*

Plaintiff nevertheless contends that the statement is defamatory. For instance, he alleges that the statement implies that he "committed an act of felonious arson," in that it implies that he tried to set his parents' *house* on fire.[60] But this argument is unavailing. Defamation by implication requires a showing that the statement is "reasonably susceptible to the defamatory meaning imputed to it."[61] This is a threshold issue "for resolution by the court,"[62] and requires a "vigorous showing" that the "language of the communication as a whole not only 'can be reasonably read both to impart a defamatory inference' but also that it 'affirmatively suggests that the author intended or endorsed that inference.'"[63]

Here, Plaintiff falls short on both showings. The language of the Article cannot be reasonably read to impart the meaning that "Plaintiff committed an act of *felonious* arson" by setting his parents' *house* on fire.[64] And there are no allegations that affirmatively suggest that *Rolling Stone* intended or endorsed such an inference. Accordingly, any claim that the "fire starter" statement constitutes defamation by implication fails.

***"Laced-Joint" and "Ghosts" Statements.*** Finally, Plaintiff's claims regarding the laced-joint and ghost statements also fail. Plaintiff contends that these statements suggest that Plaintiff caused McBride to attack his victims and that Plaintiff "perjured" himself.[65] But such an inference can only be reached when considering these statements along with materials from outside of the

---

[60] *See id.* ¶ 3(d) ("The truth is that Plaintiff never set any homes on fire . . . .") (emphasis added).

[61] *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997); *see also Lindell v. Mail Media Inc.*, 575 F. Supp. 3d 479, 485 (S.D.N.Y. 2021) (same).

[62] *Levin*, 119 F.3d at 195.

[63] *See Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 173 (S.D.N.Y. 2021) (quoting *Stepanov v. Dow Jones & Co., Inc.*, 987 N.Y.S.2d 37 (N.Y. App. Div. 2014).

[64] FAC ¶ 3 (emphasis added).

[65] *See id.* ¶¶ 3(a), (b).

*Rolling Stone* Article itself—namely the record from *People v. McBride*.⁶⁶ Those materials "constitute[] an extrinsic fact not 'presumably known to [the] readers[] [of the Article]," such that "even if [they are] pleaded and proved," they cannot be used to support a claim of defamation.⁶⁷ Plaintiff's claims must be based on statements in the *Rolling Stone* Article itself. "It is the context of the Article as a whole—not the . . . context of [Plaintiff's] outside life" that is relevant.⁶⁸ And here, the statements, even when read in their broader context of the entire Article, do not support the defamatory implications alleged by Plaintiff.

Nor is there any allegation that suggests that *Defendants* intended to imply that Plaintiff caused McBride to harm others, or that Plaintiff perjured himself. Any statements that may have had such implications were made by *others* in the Documentary; but simply quoting others' statements is not the same as endorsing them.⁶⁹ Moreover, for the laced-joint statement, the Article includes a reference to a contrary toxicology report; because the Article explicitly offers the contrary perspective, any suggestion that Defendants endorsed the laced joint statement is foreclosed.⁷⁰

### B. Motion to Amend

Plaintiff moves to amend his First Amended Complaint and attaches a proposed Second Amended Complaint (the "SAC").⁷¹ But the SAC does not address the deficiencies of the First Amended Complaint. To the extent that it further argues the Article implies that Plaintiff

---

⁶⁶ *See McBride*, 2016 WL 336205.

⁶⁷ *Lindell*, 575 F. Supp. at 488.

⁶⁸ *Id.* at 488-89.

⁶⁹ *See Kesner*, 515 F. Supp. 3d at 173 (finding that the article in question did not endorse any defamatory statements when quoting others' comments).

⁷⁰ *See* Article at 3-4 ("A toxicology report only found marijuana in McBride's system.").

⁷¹ *See* Decl. Supp. Pl.'s Mot. Leave File Second Am. Pleading, ECF No. 52.

committed perjury, it offers no additional facts that would lead to the conclusion that the Article did so.[72] Though leave should be freely granted,[73] the Second Circuit has held that request for leave to amend should be denied if amendment would be futile.[74] Because the proposed Second Amended Complaint does not contain facts that cure the deficiencies of the First Amended Complaint, amendment is futile.

## CONCLUSION

As explained above, none of the statements could plausibly support a claim of defamation.[75] Accordingly, it is hereby **ORDERED** that Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's motion for leave to amend is **DENIED**. As such, Plaintiff's claims are dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 42, along with the case.

SO ORDERED.

Dated: May 21, 2025
New York, New York

DALE E. HO
United States District Judge

---

[72] *See* FAC ¶ 3(a) ("To claim that Plaintiff . . . [would have] made the whole thing up, . . . is so inherently improbable that only a reckless person would have published it.").

[73] *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires").

[74] *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603 (2d Cir. 2005) ("The Second Circuit has held that a Rule 15(a) motion 'should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'" (quoting *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir. 1987))).

[75] Because the Court concludes that the alleged defamatory statements are not actionable, it does not consider Defendants' additional arguments that Plaintiff is libel-proof and that, as a limited-purpose public figure, he must allege actual malice by Defendants but has failed to do so.